## THE DAKOTA.

### WALSH et al. v. BROOKLYN & N. Y. FERRY CO.

(Circuit Court of Appeals, Second Circuit. March 5, 1895.)

COLLISION—FERRYBOAT WITH TUG—SPECIAL CIRCUMSTANCE RULE.
A ferryboat crossing the East river from Brooklyn was about to make her slip when she perceived a tug going up the New York shore. She thereupon blew one whistle, indicating an intention to cross the bows of the tug, slowed down, and stopped and backed as soon as danger became apparent. *Held* that, although she was the privileged vessel, the fact that she was about to make her slip was a special circumstance qualifying the rule requiring her to maintain her course and speed, and that she was not in fault for the resulting collision. 60 Fed. 1020, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by William E. Walsh and others, owners of the tugboat Olive Baker, against the steam ferryboat Dakota (the Brooklyn & New York Ferry Company, claimant), to recover damages for a collision. The district court dismissed the libel (60 Fed. 1020), and the claimant appeals.

The opinion of the district court, delivered by BROWN, District Judge, was as follows:

"The ferryboat Dakota, while crossing from her slip at Broadway, Brooklyn, to Grand street, New York, came in collision with the libelant's tugboat Olive Baker, at about half past 6 in the morning of August 15, 1893. The starboard bow of the ferryboat struck the starboard side of the tug about amidships, at an angle of from 2½ to 3 points. The time was about an hour and a half after low water at Governor's Island; and as the current in the East river continues to run down for about an hour and a half after low water, although there is a little upward current along the shores somewhat earlier, it is certain that there could not have been much flood tide to cause the ferryboat to deviate very greatly from a straight course across the river.

"Beyond the fact that the Dakota gave a signal of one whistle, almost every other circumstance in the case is a subject of most flagrant contradiction. The general theory of the libelant, to the effect that after the Dakota had given one whistle, and the Olive Baker had passed to the right, so that the boats were really out of all danger of collision, the Dakota, when pointing astern of the tug, and nearly straight down river towards the navy yard, gave two whistles and swung still more to port towards the Brooklyn shore until she ran upon the Baker far on the Brooklyn side of the river, is not only improbable in the highest degree, but is contradicted throughout by the respondent's witnesses. Such navigation by the ferryboat is inconceivable and cannot be credited. The burden of proof is upon the libelant. I cannot regard any part of his case as established. The Dakota gave no signal of two whistles; but after her first single whistle, she gave only an alarm signal of three whistles. The collision was near the New York shore. I find that the ferryboat pursued her customary course towards the Grand street slip; that there was but a slight flood current, and that she did not head down river, or towards the navy yard at any time, nor towards the southwest, though the pilot's mistake and confusion in testifying, or some error in his compass, gives a slight color to the libelant's contention in that regard. As soon as the Olive Baker was seen coming up near the New York side, threatening to go between the Dakota and her slip, the Dakota properly gave a signal of one whistle, slowed down, and afterwards stopped and backed as soon as danger from the Baker became apparent. This was in accordance with the rules of navigation. When her whistle was given, the Olive Baker had the Dakota on her own starboard hand, and was bound to keep out of the way. She could easily have done so, either by going to the right, as was her duty to do, or by stopping and backing; neither of which she did.

"I find that the Dakota did all that was required of her, by stopping and backing as soon as such action on her part was apparently needful to avoid collision; and that the collision arose from the failure of the Olive Baker to take proper and timely steps to keep out of the way."

W. W. Goodrich, for appellant.
F. A. Wilcox, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The case was tried in the district court upon oral testimony which, except as to the giving of a signal of one

whistle by the Dakota, is extremely conflicting. It is unnecessary to rehearse the facts as found by the district judge. They are fully set forth in his opinion, and we do not find sufficient in the case to warrant a reversal of such findings. The libelant contends that, even conceding the signals and movements of both vessels to be as found by the district judge, the navigation of the Dakota was faulty in that, having given a signal of one whistle, as she was entitled to do, being the privileged vessel, thereby indicating an intention to cross the bow of the Baker, she thereafter stopped and reversed her engines, thereby confusing the navigation of the Baker, and inducing her to abandon the attempt to pass under the stern of the Dakota, and to endeavor to cross the latter's bow. The district judge, however, found that the collision happened near the New York shore, the Dakota being bound into her slip at Grand street, a special circumstance qualifying the rule that the privileged vessel should keep her course and, as libelant contends, her speed. The Baker knew that she was a ferryboat about to make her slip, and should have anticipated a checking of her speed. The difficulty with the Baker seems to have been that she maintained too high a speed to allow her to conform her own movements to the course of the ferryboat. Decree of the district court affirmed, with costs.